**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARLIN POWELL, | ) | CASE NO. 1:21-CV-01591-JGC |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN JAY FORSHEY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.    Introduction

Petitioner, Carlin Powell, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Powell is an Ohio prisoner who is currently serving an aggregate ten years and six months sentence for rape and corruption of a minor. Powell asserts four grounds for relief. (ECF No. 1). Respondent, Warden Jay Forshey, filed a return of writ on January 27, 2022. (ECF No. 13). Powell filed a traverse on March 1, 2022. (ECF No. 14, 16-1). On March 3, 2022, Respondent filed a reply to the traverse. (ECF No. 15).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Powell's petition and other case-dispositive motions. Because Powell has presented only procedurally defaulted and not cognizable claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.    Relevant Factual Background

The Ohio Court of Appeals for the Eighth Appellate District set forth the following facts on direct appeal:

{¶5} At trial, A.W. testified that when she was 15 years old, she was walking to school on the morning of November 16, 1998. As she was walking, a vehicle containing two men pulled up next to her. A.W. testified that she knew the driver of the vehicle from the neighborhood. A.W. described the driver as a bald man with brown hair and a beard. She described the passenger as being a dark-skinned man with dreadlocks. A.W. stated that she was speaking with the driver when she was suddenly pulled inside the vehicle by the man in the passenger's seat. A.W. testified that she was scared and did not feel free to leave the vehicle.

{¶6} At some point, A.W. fell asleep while she was inside the vehicle. When she woke up, A.W. was at an unfamiliar house. A.W. testified that she could not remember specific details about the house, but recalled seeing people inside who seemed "drugged up." A.W. believed that she may have been drugged herself, and that she remained in the house for "maybe three days." While inside the home, A.W. alleged that she was forced to have nonconsensual vaginal sex with the bearded man, who she identified at trial as being Powell. When A.W. was eventually able to leave the house, she went to the nearest payphone and called her grandfather. She was subsequently taken to the hospital where a sexual assault kit was collected. A.W. recalled the police retrieving her clothing as potential evidence. However, A.W. could not remember whether she spoke to a police officer about the incident.

{¶7} In 2015, A.W. was contacted by Investigator Nicole DiSanto to discuss the November 1998 incident. During this meeting, A.W. was shown a photo array by a blind administrator. A.W. testified that she identified Powell's photograph from the photo array and wrote that she was "a hundred percent sure" he was the person who sexually assaulted her.

{¶8} During her cross-examination, defense counsel thoroughly questioned A.W. about perceived inconsistencies between her trial testimony and the statements she initially made to law enforcement and medical personnel. A.W. was shown a copy of her police report, marked defendant's Exhibit A. The relevant inconsistencies between A.W.'s testimony and the information contained in the police report included (1) A.W.'s description of the vehicle that pulled up beside her, (2) A.W.'s accounting of the number of individuals inside the vehicle, (3) A.W.'s description of the vehicle, (4) A.W.'s physical description of the perpetrators (5) the location of the alleged sexual assault, (6) A.W.'s description of the assault, (7) A.W.'s accounting of the number of individuals who perpetrated the alleged sexual assault, and (8) the actions A.W. took before returning home. A.W. testified that she disagreed with many of the statements contained in the police report, but qualified her testimony, stating "then again, it happened 20 years ago."

{¶9} Captain Renee Kane of the Cleveland Police Department testified that at approximately 1:30 a.m. on November 17, 1998, she responded to a missing persons report filed by A.W.'s mother. Captain Kane stated that she generated a missing persons report and initiated an investigation to locate A.W., which proved

2

unsuccessful. However, the Cleveland police were notified on November 19, 1998, that A.W. was located by her family.

{¶10} Retired Cleveland police officer, Matthew Stepic, testified that he responded to MetroHealth Medical Center for the reported rape of A.W. Officer Stepic testified that he interviewed A.W. about the incident and collected her sexual assault kit, which he transported to the police department's property room. Officer Stepic then completed a written police report.

{¶11} D.E. testified that in January 1997, she met Powell at a convenient store near the apartment she shared with her sister. After having a conversation and smoking marijuana together, D.E. and Powell exchanged phone numbers and agreed to meet up again. Approximately one week later, Powell picked D.E. up in his vehicle. D.E. stated that Powell had a friend with him in the car. She described the friend as a white man with curly blonde hair. Powell then drove to a home located in Cleveland, Ohio. Powell and D.E. went inside the home, while Powell's friend remained in the car.

{¶12} Once inside the home, D.E. and Powell began smoking marijuana. D.E. stated that there were two other individuals with them at the time. However, after a period of time, the other two individuals went upstairs, leaving D.E. and appellant alone. D.E. testified that Powell suddenly reached over and grabbed her by the neck. D.E. described the incident as follows:

> I was startled, because I really didn't know what was going on. And I was trying to push him away to stop and he pushed me down. He had me by my neck and he had my arms. He was quite bigger than me. And I started to try to scream for the other people who were in the house to come down and help me. So I began to yell for some help, like "Please help me," you know, "I need help, I need help, I need help." Nobody came. I started to fight with him to try to get him off of me and he just kept squeezing harder, and he said that if I kept fighting that he was going to hurt me, he was going to beat me up, and he wasn't going to stop. So I kind of relaxed and he started to undress me and also, you know, himself, and he began to penetrate me.
>
> * * *
>
> He had me, he was holding me tightly, and, you know, he told me, "You shut the fuck up. You're not leaving here." I did not feel that I had a choice. So after that had happened and I kept asking him to please stop and he told me to shut the fuck up, he hit me in the face and it was done. He just got up off of me. And I was sobbing and crying and — I don't really know what I thought was going to happen next. I got up and I moved away from him.

3

{¶13} D.E. clarified that Powell held her down and penetrated her vagina with his penis. When she returned home, D.E. immediately told her sister that she had been raped and went to the hospital for medical examination, where a sexual assault kit was completed.

{¶14} D.E. testified that a Cleveland police detective arrived at her home the next day to take a statement. D.E. admitted that she initially told detectives that the rape occurred inside Powell's vehicle. D.E. further conceded that she did not tell detectives about smoking marijuana with Powell. She explained that she did not tell the police the complete truth because she blamed herself for what happened, did not want her father to know she was smoking marijuana, and did not want to be "looked at differently" for going to a place she did not know with a person she had just met.

{¶15} Years later, D.E. was contacted by Investigator Nicole DiSanto to discuss the January 1997 incident. During this meeting, D.E. was shown a photo array by a blind administrator. D.E. testified that she identified Powell as the person who sexually assaulted her. D.E. stated that she knew it was Powell "immediately when [she] saw [the photo array]."

{¶16} During her cross-examination, D.E. was confronted with inconsistencies between her trial testimony and her initial statement to the police and medical personnel. In relevant part, the records indicated that (1) D.E. stated that she met Powell at a K-Mart, rather than a local convenience store; (2) D.E. described the passenger in Powell's vehicle as a black male; (3) Powell kissed her in the back seat of the vehicle; and (4) that the sexual assault occurred inside the vehicle. Defense counsel also referenced D.E.'s criminal history and police records indicating that D.E. failed to appear for an appointment to further discuss the incident.

{¶17} Retired sex-crimes detective, Sgt. Michael Kmiecik of the Cleveland Police Department, testified that he conducted a field interview of D.E. in 1997. He testified that he had no independent recollection of the conversation. However, having reviewed the police report, Sgt. Kmiecik testified that when the information gathered from the interview with D.E. was presented to the prosecutor, it was determined that there was "insufficient evidence to sustain a charge or to have probable cause to charge anyone at that time." Accordingly, the file pertaining to D.E. was marked as "no further investigation leads at this time." During his cross-examination, Sgt. Kmiecik testified that in 2007, a follow-up detective reached out to D.E. "after getting a hit on DNA." Sgt. Kmiecik stated that the follow-up detective made contact with D.E. and scheduled an appointment to further discuss her case. However, D.E. was "a no-show for the appointment" and her case was closed following a consultation with the prosecutor.

4

{¶18} Nicole DiSanto is employed as an investigator by the Cuyahoga County Prosecutor's Office. DiSanto testified that she began investigating the sexual assault of A.W. after the prosecutor's office received information linking Powell's DNA to the DNA recovered from A.W.'s sexual assault kit. Upon receiving this information, DiSanto reviewed the original police report and contacted A.W. about the incident. DiSanto testified that, before discussing the facts and circumstances of the incident with A.W., a blind administrator presented A.W. with a photo array. DiSanto stated that A.W. identified Powell as her attacker and confirmed that the incident was not a consensual encounter.

{¶19} DiSanto testified that she also travelled to North Carolina to conduct a recorded interview with Powell regarding his recollection of A.W. According to DiSanto, Powell admitted that he "[knew] her from the neighborhood." However, he denied having sex with A.W. and stated that he would not have been having sex with a 15-year old when he was 21-years old.

{¶20} DiSanto also testified at trial regarding her investigation of the sexual assault committed against D.E. She stated that she began investigating the case after the prosecutor's office received a DNA hit linking Powell's DNA to the DNA recovered from D.E.'s sexual assault kit. Upon receiving this information, DiSanto interviewed D.E. in April 2015. During the interview, D.E. was forthright, emotional, and told DiSanto right away that she had originally lied to the police about the circumstances of the sexual assault when she was 16-years old. DiSanto stated that a blind administrator presented D.E. with a photo array and that D.E. "was able to identify Carlin Powell as her attacker." DiSanto testified that she also conducted an interview with Powell regarding his interactions with D.E. DiSanto testified that Powell stated that he could not remember D.E.'s face. He further denied having intercourse with D.E.

{¶21} When confronted with the DNA evidence obtained from A.W.'s and D.E.'s sexual assault kits, Powell denied ever raping anyone. However, Powell also testified that "he was doing drugs and everything and doesn't remember anything" from the relevant time period. DiSanto further testified that "as soon as DNA was brought up, he said, 'Well, it was on her panties.' " When DiSanto asked why he would be specific about panties, Powell stated, "Well, because that's where it would leak out and that's where someone's semen would go if they had sex." At the conclusion of the interview, Powell consented to a buccal swab, which was submitted to the Ohio Bureau of Criminal Investigation for comparison to the evidence contained in A.W.'s and D.E.'s sexual assault kits.

{¶22} Tina Stewart testified that she was formerly employed as a scientific examiner with the Cleveland Police forensics laboratory. Stewart worked in the serology section of the forensic laboratory during the time period when D.E.'s and A.W.'s sexual assault kits and clothing were first analyzed. Stewart provided extensive testimony regarding the chain of custody protocol and procedures utilized by the forensic laboratory.

{¶23} Stewart explained that when evidence was delivered to the laboratory for testing, the evidence was assigned a six-digit number that was unique to that piece of evidence. A forensic analyst would then generate a "matching [laboratory] card with the same laboratory number, and on that card would have information about that evidence." Stewart testified that when the forensic analysis was completed, the results of the testing would be written on the front side of the corresponding laboratory card. If evidence submitted to the laboratory tested positive for blood or semen, the evidence would be placed in an individually sealed envelope, marked with the unique six-digit number previously assigned to that evidence, and stored in the laboratory in case further testing was required. The remaining evidence was transported to the Cleveland Police property room.

{¶24} Stewart also testified regarding the procedure that was utilized for testing evidence, including the steps taken to prevent the contamination of evidence. She explained, in relevant part:

> The analysts changed their gloves between different evidence, and then when the evidence was finished being analyzed it would be sealed with evidence tape. And also, on the back of the [laboratory] cards we have the chain of custody listed where the evidence has been, so we have a written copy of where all the evidence has gone.

If evidence came into the laboratory unsealed or with a broken seal, that information would be noted by the analyst on the laboratory card.

{¶25} Regarding D.E.'s case, the state presented Stewart with D.E.'s forensic laboratory report, marked state's exhibit No. 25. Stewart testified that D.E.'s sexual assault kit and clothing were submitted to the laboratory on January 17, 1998. The evidence was assigned a unique six-digit number. Stewart testified that state's exhibit No. 25 is a copy of the laboratory card used by the analysts to record all pertinent information about the tested evidence. Stewart explained that the front side of the laboratory card contained the results of the serology testing and the initials of the analysts who performed the serology testing. In turn, the back of the card listed the evidence submitted to the laboratory and the chain of custody log. Stewart then identified each piece of evidence submitted to the laboratory for testing in D.E.'s case. She also discussed the custodial history of the relevant evidence by referencing the chain of custody information delineated on the back of the laboratory card. Stewart clarified that she was not the primary analyst assigned to conduct the forensic analysis in D.E.'s case.

{¶26} Regarding the serology testing performed on the evidence submitted in A.W.'s case, the state presented Stewart with A.W.'s forensic laboratory report, marked state's exhibit No. 26. Stewart testified the A.W.'s rape kit and clothing were submitted to the laboratory on November 23, 1998. The evidence was assigned a unique six-digit number. Stewart testified that state's exhibit No. 26 is a

copy of the laboratory card, which also listed the evidence tested, the results of the serology testing, and the relevant chain of custody information. Stewart identified the evidence that was submitted to the laboratory for testing and discussed the custodial history of the relevant evidence by referencing the chain of custody information delineated on the back of the laboratory card. Stewart confirmed that she did not perform the serology testing in A.W.'s case.

{¶27} During her cross-examination, Stewart was questioned extensively about the possibility of evidence being contaminated due to the procedures used in 1998 that are no longer standard practice. For instance, Stewart conceded that the laboratory received most of D.E.'s hospital clothing in a single bag. While Stewart indicated that D.E.'s underwear was stored separately, she agreed that placing all of D.E. remaining clothing in one bag would not comply with current standard procedures. In addition, Stewart admitted that the laboratory reports did not specify the tests that were performed on the evidence collected. Stewart was also questioned at length about the primary analyst who worked on both D.E. and A.W.'s cases. Stewart testified that the analyst, J.M.S., was subsequently fired, then reinstated, by the laboratory "because they thought he did an error with one of his statistics," resulting in the reversal of a criminal conviction in an unrelated case.

{¶28} During her direct examination, Stewart did not provide any testimony regarding the results of the serology testing that was performed in each case. However, during her cross-examination, Stewart was asked for the first time to discuss the results of the testing in D.E.'s case. Relevant to this appeal, Stewart confirmed that D.E.'s vaginal swabs tested negative for semen and blood; her vaginal smear slides tested negative for spermatozoa; the "outside area of rear of blue and black panties" tested positive for seminal fluid; and the "seat area of jeans, stain on right front leg of jeans" tested positive for seminal fluid. On redirect examination, Stewart reiterated the results of D.E.'s serology tests and explained the nature of the forensic tests that were performed in each case.

{¶29} Heather Bizub, a DNA analyst for the Bureau of Criminal Identification, testified that she compared the DNA derived from Powell's buccal swab to the biological evidence extracted from D.E.'s sexual assault kit and the clothing collected from her at the hospital. Her findings were reduced to a DNA report, dated September 11, 2015. Bizub testified that D.E.'s vaginal swab contained a mixture of DNA, with D.E. being a major contributor, as well as male DNA. However, Bizub explained that the data was insufficient for her to make a comparison or draw a conclusion regarding the male contributor. Thus, Bizub stated that she could not provide an opinion as to whether Powell was the minor contributor. Regarding bodily fluid extracted from a cutting of D.E.'s underwear, Bizub testified that Powell was identified as the sole contributor. She stated, to a reasonable degree of scientific certainty, that the frequency of a similar DNA appearing was one in 27 quadrillion-60 trillion unrelated individuals.

{¶30} Bizub testified that she was also involved in the DNA testing performed on the evidence submitted in A.W.'s case. Bizub stated that she compared the DNA derived from Powell's buccal swab to the biological evidence extracted from A.W.'s sexual assault kit. Her findings were reduced to a DNA report, dated September 14, 2015. Bizub testified that an anal sample taken from A.W. contained a mixture of DNA, with A.W. being a major contributor. The sample contained male DNA, but the profile was insufficient for Bizub to render a conclusion about the source of the minor contributor. However, Bizub testified that she identified Powell as a contributor to the seminal fluid mixture extracted from A.W.'s pubic hair combings, a vaginal swab, and two separate skin swabs. Bizub stated, to a reasonable degree of scientific certainty, that for the pubic hair combings the frequency of a similar DNA appearing was one in 533 trillion unrelated individuals. For the vaginal swab, the frequency was one in 36 quintillion-310 quadrillion unrelated individuals. For the first skin swab, the frequency was one in 36 quintillion unrelated individuals. Finally, for the second skin swab, the frequency was one in 36 quintillion-310 quadrillion unrelated individuals.

*State v. Powell*, 2019-Ohio-4345, ¶¶ 5-30, 134 N.E.3d 1270, 1275–81 (8th Dist. Ohio Oct 24, 2019). The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

## III.     Relevant State Procedural History

### A.     Indictment

Powell was indicted on August 12, 2015, for:

> Count 1: Rape, R.C. 2907.02(A)(2), felony of the first degree;

> Count 2: Kidnapping, R.C. 2905.01(A)(4), felony of the first degree;

> Count 3: Rape, R.C. 2907.02(A)(2), felony of the first degree, with sexually violent predator specification (R.C. 2941.148(A));

> Count 4: Kidnapping, R.C. 2905.01(A)(4), felony of the first degree, with sexual motivation specification (R.C. 2941.147(A)) and sexually violent predator specification (R.C. 2941.148(A));

Count 5: Rape, R.C. 2907.02(A)(2), felony of the first degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 6: Corruption of a Minor, R.C. 2907.04(A), felony of the fourth degree; and

Count 7: Kidnapping, R.C. 2905.01(A)(4), felony of the first degree, with sexual motivation specification (R.C. 2941.147(A)) and sexually violent predator specification (R.C. 2941.148(A)).

(ECF No. 13-1, Ex. 1). At arraignment, Powell plead not guilty to all charges. (ECF No. 9-1, Ex. 2).

## B.    Motion to Dismiss

In November 2016, Powell filed a motion to dismiss for preindictment delay, arguing that he was prejudiced by the unjustifiable delay between the alleged commission of the offenses and the time he was indicted. Following a hearing, the trial court denied Powell's motion to dismiss. (ECF No. 10-1, PageID #: 171, Ex. 25).

## C.    Trial and Guilty Verdict

In January 2018, the matter proceeded to a jury trial.[1]

"{¶31} M.S. did not appear for trial. Accordingly, the trial court granted the state's motion to dismiss Counts 1 and 2 of the indictment, which correlated to the conduct alleged to have been committed against M.S. Defense counsel rested without presenting any witnesses.

{¶32} At the conclusion of trial, the jury found Powell guilty of Count 3, the rape of D.E.; Count 4, the kidnapping of D.E., with the sexual motivation specification; and Count 6, corruption of a minor involving A.W. Powell was found not guilty of the rape and kidnapping offenses alleged to have been committed against A.W. The trial court further found Powell not guilty of the sexually violent predator specifications that were attached to Counts 3 and 4.

{¶33} At the sentencing hearing, the trial court found that the rape and kidnapping offenses committed against D.E. were allied offenses of similar import. The state elected to proceed with sentencing on the rape offense, and the trial court imposed

---

[1] The sexually violent predator specifications associated with Counts 3, 4, 5, and 7 were tried to the bench.

a nine-year term of imprisonment. The trial court then imposed an 18-month term of imprisonment on the corruption of a minor offense, to run consecutively to the rape offense, for an aggregate prison term of 10 years and six months.

*Powell*, 2019-Ohio-4345, ¶¶ 31-33, 134 N.E.3d at 1281.

### D.  Direct Appeal

On appeal, Powell raised the following assignments of error:

1. Tina Stewart's testimony detailing evidence collection by a forensic scientist who has since been fired for misconduct violated Powell's right to confrontation and the state rules of evidence which bar such hearsay.

2. Powell's rights to due process and a fundamentally fair trial were compromised by the jury's improper exposure to evidence of a third victim who the state did not call as a witness.

3. Powell was deprived of his Sixth Amendment right to the effective assistance of counsel.

(ECF No. 13-1, Ex. 55 at PageID #: 310). In Powell's Sixth Amendment assignment of error, he argued that his counsel was ineffective for failing to seek severance of the three separate sexual misconduct incidents and for failing to renew and/or file a motion to dismiss the prosecution for preindictment delay that more specifically addressed the evidence lost as a result of the delay. (*Id*. at PageID #: 341). The State of Ohio filed an Appellee's brief (ECF No. 13-1, Ex. 56), and on October 24, 2019, the state appellate court overruled Powell's error assignments and affirmed his convictions and sentence. *Powell*, 2019-Ohio-4345, ¶¶ 31-33, 134 N.E.3d at 1281; (ECF No. 13-1, Ex. 57).

### E.    Appeal to the Ohio Supreme Court

On December 9, 2019, Powell appealed, through counsel, to the Ohio Supreme Court. (ECF No. 13-1, Ex. 58). Powell's memorandum in support of jurisdiction raised the following propositions of law:

**Proposition of Law I:** Using testimony from an evidence technician about work undertaken by another analyst, who was subsequently fired for misconduct, violates the accused's right to confrontation and the State evidence rules barring hearsay.

**Proposition of Law II:** The prosecution violates the accused's right to due process and a fair trial when it promises evidence about additional charged misconduct and then fails to call the alleged victim of that misconduct as a witness at trial.

**Proposition of Law III:** Trial counsel provides ineffective representation where he fails to file and litigate a motion seeking dismissal for prejudicial preindictment delay where the prosecution involves accusations that are decades old and the record indicates that occurrence witnesses that may have otherwise been available are lost.

(ECF No. 13-1, Ex. 59, PageID #: 427). On February 18, 2020, the Ohio Supreme Court declined jurisdiction. (ECF No. 13-1, Ex. 61).

### F. Ohio App. R. 26(B) Application to Reopen

Powell timely filed an application under Ohio App. R. 26(B) to reopen his appeal raising the following errors:

1. The trial courts erred when it denied the defense "Motion of Acquittal" due to the state's main witnesses committed perjury, as well as the state's prosecutor and cold case investigator committed subornation of perjury and the tampering with evidence.

2. Carlin Powell was denied his Sixth Amendment Right to the effective assistance of counsel due to defense attorneys withholding of evidence in not calling forth an expert witness for the defense to refute the state expert's witnesses on the insufficient, fraudulent D.N.A. analysis and evidence in this case.

3. From the ineffectiveness of counsel, the trial courts erred in allowing deficient, fraudulent D.N.A. evidence collected and analyzed by (J.S.) Joseph Serowik, (in whom has since been fired for his misconduct of falsifying evidence), whom is also being accused of falsifying and tampering of evidence in this case at hand.

4. From the bias and prejudice procedure and proceedings of the Cuyahoga County Court of Common Pleas. Mr. Powell was denied due process of his V, and IVX Amendments of the U.S. constitution, in the appellant being denied his Sixth Amendment right to a fair and speedy trial as was invoked/requested, as well as the

11

State of Ohio being in violation of "Treaty" laws, and compact pursuant Articles:
III (a), IV (c) and V, of the (IAD) Interstate Agreement on Detainers.

(ECF No. 13-1, Ex. 62). The State of Ohio responded in opposition. (ECF No. 13-1, Ex. 63). On

July 29, 2020, the state appellate court denied Powell's application to reopen his direct appeal.

(ECF No. 13-1, Ex. 64).

Powell appealed to the Ohio Supreme Court raising the following propositions of law:

1. It is unconstitutional to allow states witnesses to commit perjury, as well as the
states prosecutor to commit subornation of perjury and the tampering of evidence.

2. Trial counsel provides ineffective assistance of counsel when it withheld
evidence and did not call fourth an expert witness for the defense on matters based
upon scientific evidence.

3. The DNA evidence in this case was insufficient due to the fraudulent acts of
serologist Joe Serowik (J.S.) as well as the state of Ohio's two laboratories custodial
and testing procedures compromised the integrity of the trustworthiness of the DNA
analysis in this case.

4. The state of Ohio violated "Treaty" and Articles III(a), IV(c), and V of the (IAD)
Interstate Agreement on Detainers, as well as Article 1, 10, cl. 3 of the constitution,
in the denial of Mr. Powell's Sixth Amendment constitutional right to a fair and
speedy trial, pursuant R.C. 2963.30.

(ECF No. 13-1, Ex. 66). The State filed a waiver of memorandum in response. (ECF No. 13-1, Ex.

67), and on October 13, 2020, under Case No. 2020-1042, the Ohio Supreme Court declined to

accept jurisdiction of Powell's appeal pursuant to Ohio S. Ct. Prac. R. 7.08(B)(4). *State v. Powell*,

160 Ohio St.3d 1421, 2020-Ohio-4811, 154 N.E.3d 108; (ECF No. 13-1, Ex. 68).

Powell did not timely file a petition for certiorari in the United States Supreme Court and

his filing deadline expired on January 11, 2021. *See* Sup. Ct. R. 13.

### G.  Post-Conviction Relief

On March 31, 2020, Powell filed a pro se motion for leave to file an untimely motion for

new trial (ECF No. 13-1, Ex. 69) and an instanter motion for a motion for new trial (*id*., Ex. 70) in

the state trial court. The State opposed (*id.*, Ex. 71), and Powell replied (*id.*, Ex. 72). On July 16,

2020, the trial court denied Powell's motion for leave and, thus, Powell's motion for a new trial.

(*Id.*, Ex. 73). On August 19, 2020, Powell appealed in the state appellate court and raised to

following assignments of error:

1. The trial court abused its discretion when it failed to grant Powell's motion for leave to file a motion for new trial when the record demonstrated by clear and convincing proof that Powell was unavoidably prevented from discovering the new evidence and presented it to the court within a reasonable time following its discovery.

2. The trial court abused its discretion when it failed to hold a hearing on Powell's motion for leave to file a motion for new trial when the record and circumstances supported Powell's claim that he was unavoidably prevented from discovering the evidence at issue, and where the evidence support a potential Brady violation as well as a Crim. R. 16 violation.

(ECF No. 13-1, Ex. 75). The State filed an Appellee's brief and Powell replied. (*Id.*, Exs. 76 and

77, respectively. On July 15, 2021, under Case No. CA-20-109897, the state appellate court

affirmed the trial court judgment. *State v. Powell*, 8th Dist. Cuyahoga No. 109897, 2021-Ohio-

2440. (*Id.*, Ex. 78). Powell did not timely appeal the decision to the Ohio Supreme Court and his

filing deadline expired Monday, August 30, 2021. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i); Ohio

S. Ct. Prac. R. 3.03(A)(1).

## IV.    Federal Habeas Corpus Petition

On July 20, 2021, Powell petitioned pro se that this Court issue a writ of habeas corpus.

(ECF No. 4). Powell asserted the following grounds for relief:

> **GROUND ONE:** It is unconstitutional to allow state witnesses to commit perjury as well as the state prosecutors to commit subornation of perjury and the tampering of evidence.
>
> **Supporting Facts:** Head inv. Nicole Disanto and both alleged victims A.W, and D.E. committed perjury. D.E. committed perjury and admitted that her original statement and complaint was false. Prosecutors Ed. Fadel, Mary Frey, and Head Inv. Nichole

DiSanto tampered and withheld evidence from the defense in its request for discovery. This withheld evidence was given to a third party whom put this evidence in a documentary in which was being broadcasted on the internet and throughout many different cities and states of the U.S. one year prior to, and throughout the trial of this case on 1/22/18.

**GROUND TWO**: Trial counsel provides ineffective assistance of counsel when it withheld evidence and did not call fourth (sic) an expert witness on matters concerning scientific evidence.

**Supporting Facts:** Trial counsel withheld 'DNA' evidence and was ineffective in not hiring an expert witness for the defense to refute the insufficient 'DNA' evidence submitted by seroliqist/analysist. 'Joseph Serawik.' Trial and Appellate court stated 'DNA' of alleged victim (D.E.) was consumed. Yet trial record (Exhibit 19). BCI report remarks read: "Portions of each item remain should independent analysis be requested. All remaining evidence has been returned to the submitting agency." Petitioner was still denied this constitutional right even after request of the retesting of 'DNA,' was granted by trial court on 7/15/16. 23 Loci is the loci requirement pursuant the 'DNA' Initiative of the Justice Department, Not the 12 and 13 loci results in this case. (Tr. 764, 776).

**GROUND THREE:** Insufficient 'DNA' evidence, fraudulent analysis of seroliquist "Joseph Serowik" state of Ohio's two laboratories testing were compromised. 2 contradicted results on same "DNA" analyzed.

**Supporting Facts:** State expert witnesses 'Heather Bizub' testified that 23 loci is the loci requirement to affirm a positive match, pursuant 'DNA' initiative of the Justice Department (Tr. 764). This case loci were 12, and 13 loci. (Tr. 776). State expert witnesses 'Tina Stewart' and 'Heather Bizub' came to two different contradictive results on the same 'DNA' analyzed. (Tr. 694, 739). Prime analyst 'Joseph Serowik' was fired in 2004 for falsyfing "DNA" results in previous cases. He submitted the fraudjulent "DNA" in this case on 8/28/02 Exhibit 19. (Tr. 965- 966). Analysis submitted did not show what procedures were done to get resulting in which is not up to code. (Tr. 684-685). (*sic*)

**GROUND FOUR:** State of Ohio is in violation of the Interstate Agreement on Detainers Act (IADA) O.R.C. 2963.30. Article 1, 10, el 3, of the Ohio Const. violation of VI, and IVX Amendment of U.S. Constitution.

**Supporting Facts:** Petitioner requested speedy trial pursuant 111(2) of the (IADA). 3/15/16 began running of time. Arrived in Ohio jurisdiction on 5/26/16. Requested 'speedy trial' pursuant Article IV(C) on 7/21/16. Was held in the Cuyahoga County Correctional Center, from 5/26/16 through 5/17/18. Trial commenced on 1/22/18. Around 480-days over the 180-day requirement of Article 111(2), and around 460-days over the 120-day requirement of Article IV(C), and V of the (IADA). Trial was continued continually to wait for prosecutions alleged victim (M.S.) to be released from incarceration in Las Vegas, Nevada. (Tr. 668-669). The state continually continued this case without good nor reasonable cause being shown on the record.

(ECF No. 4, PageID #: 5-16).

## V.    Legal Standards

### A.    Timeliness of Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Sexton v. Wainwright*, 968 F.3d 607, 609-10 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1064 (2021). There is no dispute that Powell timely filed his federal habeas corpus petition within the 28 U.S.C. §2244(d) 1-year statute of limitations. (*See* ECF No. 9 at 15).

### B.    Jurisdiction

Title 28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga

County sentenced Powell and Cuyahoga County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Powell's § 2254 petition.

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### D. Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief. 28 U.S.C. § 2254(b) and (c)." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12 (N.D. Ohio Feb. 12, 2007). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state

supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*, 336 F.Supp.2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999*)*; *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id.* (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### E. Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982); *Williams v. Anderson*, 460 F.3d 798, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732-33.

To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

18

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))). Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and must be supported with "new reliable evidence ... that was not presented at trial," *Schlup*, 513 U.S. at 24.

## VI.    Discussion

### A.    Ground One

In Powell's first habeas relief ground, he asserts that "It is unconstitutional to allow state witnesses to commit perjury as well as the state prosecutors to commit subornation of perjury and the tampering of evidence." (ECF No. 4, PageID #: 6-7). In support, Powell states:

> Head inv. Nicole Disanto and both alleged victims A.W, and D.E. committed perjury. D.E. committed perjury and admitted that her original statement and complaint was false. Prosecutors Ed. Fadel, Mary Frey, and Head Inv. Nichole DiSanto tampered and withheld evidence from the defense in its request for

19

discovery. This withheld evidence was given to a third party whom put this evidence in a documentary in which was being broadcasted on the internet and throughout many different cities and states of the U.S. one year prior to, and throughout the trial of this case on 1/22/18.

(ECF No. 4, PageID #: 6-7). The Warden asserts that Powell procedurally defaulted on his Sixth Amendment and prosecutorial misconduct claims by failing to fairly present the claims to the Ohio courts. (ECF No. 13 at 36-37). Alternatively, Respondent argues that Ground One is meritless. (*Id.* at 37). Powell responds that he raised Ground One in his Ohio App. R. 26(B) petition to reopen his direct appeal. (ECF No. 14 at 27-28). Powell also argues that he raised this claim in his motion for a new trial. (*Id.* at 28). This Court agrees with Respondent that Ground One is procedurally defaulted.

"[A] defendant has procedurally defaulted a claim" if he "fail[s] to raise it on direct review." *Bousley*, 523 U.S. at 622.  Powell's claim regarding his Sixth Amendment rights and prosecutorial misconduct could have been objected to and raised on direct appeal and were not. *See United States v. Schaeffer*, 626 F. App'x 604 (6th Cir. 2015) (raising only evidentiary issues). Because Powell failed to raise Ground One on direct appeal, and he can no longer do so, Ground One is procedurally defaulted.

Powell's argument that he properly exhausted the claim by raising the arguments in his Ohio App. R. 26(B) petition fails. Respondent correctly observes that "an Ohio App.R. 26(B) application only preserves Sixth Amendment ineffective assistance of appellate counsel claims, it does not preserve any underlying claims because they are 'analytically distinct.'" (ECF No. 13 at 38 (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)). Accordingly, Powell's Ohio App. R. 26(B) application did not preserve for federal habeas review his Sixth Amendment due process and prosecutorial misconduct claims.

20

Powell attempted to raise a similar claim in his untimely post-conviction motion for new trial. (ECF No. 13-1, Ex. 70, PageID #: 625). Ohio Rule of Criminal Procedure 33 requires that a defendant move for a new trial within 120 days of the guilty verdict. Powell conceded that he filed his motion outside the required period[2] and sought leave to file a delayed motion for new trial. (ECF No. 13-1, Ex. 69, PageID #: 590). In his motion, Powell argued that the HBO documentary, *I am Evidence,* which was created and released prior to his trial, supported his claims of witness and prosecutorial misconduct and was "newly discovered evidence." The state trial court found that Powell had not been "unavoidably prevented from discovering the basis of [his] motion" within the 120-day period and, therefore denied Powell leave to move for a new trial. (ECF No. 13-1, Ex. 73, PageID #: 705-6). The state appellate court affirmed the trial court's decision (*id.*, Ex. 78, PageID #: 783) and Powell did not appeal that decision to the Ohio Supreme Court. By failing to appeal the denial of the application to the Ohio Supreme Court, Powell procedurally defaulted on the claims raised the application. *See Johnson v. Sheldon*, No. 3:19-CV-0710, 2020 WL 12787704, at *6 (N.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 3:19-CV-0710, 2021 WL 5149012 (N.D. Ohio Nov. 5, 2021).

Powell does not argue any cause for his procedural defaults (either failing to raise the issue on direct appeal or failing to appeal the denial of his post-conviction motion for a new trial to the Ohio Supreme Court). (*See* ECF Nos. 4 and 14).[3] Because Powell has not established cause for his procedural default, this Court need not address whether he was actually prejudiced. *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

---

[2] In fact, 792 days has passed. (*See* ECF No. 13-1, Ex. 78, PageID #: 778).

[3] Although Powell includes sections titled "Exhaustion" and "Procedural Default" in his Traverse, he fails to explain why this Court should excuse his procedural default. (*See* ECF No. 14 at 29-31).

Further, Powell has presented no new, reliable evidence to support a claim of actual innocence or otherwise provided this Court a basis upon which to conclude that leaving his conviction undisturbed would be a fundamental miscarriage of justice. A "fundamental miscarriage of justice" means that the alleged errors "probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495–96, 106 S.Ct. 2639. Actual innocence, which permits federal habeas review of a procedurally defaulted claim, means "factual innocence, not merely legal insufficiency." *Bousley*, 523 U.S. at 623. To meet this high burden, the petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S. at 324. This requires the petitioner to show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including any evidence allegedly "available only after the trial." *Id.* at 327–28. The actual innocence exception should "remain rare" and should "only be applied in the extraordinary case." *Schlup,* 513 U.S. at 321 (quotation omitted).

Powell directs the Court's attention to the HBO documentary *I am Evidence* and calls it "new" evidence that supports his assertions of prosecutorial misconduct and Sixth Amendment violations. However, this evidence is not new. The evidentiary materials Powell refers to demonstrate that they were available in April 2018 when the documentary was shown on HBO, prior to his sentencing on May 14, 2018. (*See* ECF No. 14 at 31-48).  Further, the rest of the materials Powell refers to were dated either before trial or were transcripts from the trial. (*See id*.). Powell and his counsel knew at the time of trial that the documentary existed. Powell's counsel questioned State's witness DiSanto about bringing a film crew taping an HBO documentary with her when she interviewed one of the victims in April of 2015. (ECF No. 13-4, PageID #: 1795-

1796). During closing arguments in the trial, Powell's trial counsel essentially argued that one of

the testifying victims was biased and not credible with her testimony because she knew that a "film

crew for a documentary" was coming with Ms. DiSanto "and all of a sudden she was cooperative

again. I think that tells you something about her mentality and what she's looking for." (ECF No.

13-4, PageID #: 1898-99). With any reasonable diligence, the documentary itself could have been

discovered at the time of trial through the internet. Accordingly, the documentary *I am Evidence*

is not new reliable evidence to support a claim of actual innocence.

Because Ground One is procedurally defaulted and because Powell has neither

demonstrated cause and prejudice to excuse the default nor presented new, reliable evidence of his

actual innocence, Ground One should be dismissed as procedurally defaulted.

### B.  Ground Two

In Ground Two, Powell asserts that his trial counsel was ineffective "when it withheld

evidence and did not call fourth [sic] an expert witness on matters concerning scientific evidence."

In support, Powell states that:

> Trial counsel withheld 'DNA' evidence and was ineffective in not hiring an
> expert witness for the defense to refute the insufficient 'DNA' evidence submitted
> by seroliqist/analysist. 'Joseph Serawik.' Trial and Appellate court stated 'DNA'
> of alleged victim (D.E.) was consumed. Yet trial record (Exhibit 19). BCI report
> remarks read: "Portions of each item remain should independent analysis be
> requested. All remaining evidence has been returned to the submitting agency."
> Petitioner was still denied this constitutional right even after request of the retesting
> of 'DNA,' was granted by trial court on 7/15/16. 23 Loci is the loci requirement
> pursuant the 'DNA' Initiative of the Justice Department, Not the 12 and 13 loci
> results in this case. (Tr. 764, 776).

(ECF No. 4, PageID #: 8-9). Respondent argues that Ground Two is procedurally defaulted and,

in the alternative, meritless. (ECF No. 13 at 49-50). This Court agrees that Ground Two is

procedurally defaulted.

Powell did not raise an identical Sixth Amendment right to effective trial counsel claim in his direct appeal to the state appellate court. (Appellee's Brief, Exhibit 55). On direct appeal, Powell asserted that his counsel had been ineffective by not requesting a severance of the three separate rape counts and for failing to file a "sufficient" motion to dismiss for preindictment delay. (*Id*.). In Ground Two, Powell now attempts to argue that his trial counsel was ineffective for failing to call an expert witness to testify regarding the DNA evidence presented at trial. "[T]o the extent that an ineffective assistance of counsel claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented to the state courts. *Caver v. Straub*, 349 F.3d 340, 346–47 (6th Cir. 2003) (citing *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). Powell raised an ineffective assistance of counsel claim on direct appeal – but not the one he raises here. (*See* ECF No. 13-1, Ex. 55, PageID #: 337-344). The ineffective assistance of counsel claim raised in Ground Two could have been on direct appeal but was not. *See Schaeffer*, 626 F. App'x 604. Because Powell failed to raise Ground Two in the state courts, and he can no longer do so, Ground Two is procedurally defaulted.

Similar to Ground One, Powell's argument that he properly exhausted the claim by raising the arguments in his Ohio App. R. 26(B) petition fails as "an Ohio App.R. 26(B) application only preserves Sixth Amendment ineffective assistance of appellate counsel claims, it does not preserve any underlying claims because they are 'analytically distinct." *White*, 431 F.3d at 526.

As discussed above, Powell does not argue any cause for his procedural default nor demonstrate that a miscarriage of justice will occur if the procedural default is not excused. (*See* ECF Nos. 4 and 14). Because Powell has not established cause for his procedural default, this Court need not address whether he was actually prejudiced. *Simpson*, 238 F.3d at 409.

Accordingly, Ground Two should be dismissed as it is procedurally defaulted.

24

### C. Ground Three

In Ground Three, Powell asserts: "Insufficient 'DNA' evidence, fraudulent analysis of seroliquist "Joseph Serowik" state of Ohio's two laboratories testing were compromised. 2 contradicted results on same "DNA" analyzed." (ECF No. 4 at 8).

In support, Powell states that

> State expert witnesses 'Heather Bizub' testified that 23 loci is the loci requirement to affirm a positive match, pursuant 'DNA' initiative of the Justice Department (Tr. 764). This case loci were 12, and 13 loci. (Tr. 776). State expert witnesses 'Tina Stewart' and 'Heather Bizub' came to two different contradictive results on the same 'DNA' analyzed. (Tr. 694, 739). Prime analyst 'Joseph Serowik' was fired in 2004 for falsyfing "DNA" results in previous cases. He submitted the fraudjulent "DNA" in this case on 8/28/02 Exhibit 19. (Tr. 965- 966). Analysis submitted did not show what procedures were done to get resulting in which is not up to code. (Tr. 684-685). [sic]

(ECF No. 4 at 8). Respondent argues that to the extent Powell's Ground Three raises an evidentiary issue, it is not cognizable on habeas review.[4] (ECF No. 13 at 57). Although not entirely clear by the wording in the Petition, Powell's Traverse indicates that Ground Three challenges the trial court's admission of expert evidence and/or testimony at trial. (*See* ECF No. 14 at 53-58). Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Bey*, 500 F.3d at 519 (citing *Walker,* 703 F.2d at 962; *see also Coleman v. Mitchell,* 244 F.3d 533, 542 (6th Cir. 2001) (recognizing that a federal habeas court does not rule on "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence")). "Otherwise stated, a state court's violation of its own evidentiary law

---

[4] Respondent also argues that to the extent Powell attempts to raise a Sixth Amendment Confrontation Clause issue, such a claim is procedurally defaulted and, in the alternative, meritless. (ECF No. 13 at 57). Powell does not address this argument in his Traverse. (*See* ECF No. 14 at 53-58). Although the Court agrees with Respondent's argument that such a ground for relief would be procedurally defaulted (*see* ECF No. 13 at 58-60), a thorough reading of Powell's Traverse demonstrates that Ground Three does not involve a confrontation clause claim.

does not, *ipso facto,* provide a basis upon which a federal court may grant habeas relief." *Id.* (citing *e.g., Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).

Because Powell was charged under Ohio's criminal statutes and prosecuted in an Ohio state court, the prosecutor's proof burden came from Ohio Rev. Code § 2907.02, 2905.01, and 2907.04, and the admissibility of evidence was governed under the Ohio Rules of Evidence. *Compare* Ohio Evid. R. 101(A) ("These rules govern proceedings in courts of this State."), *with* Fed. R. Evid. 1101(a) (providing that the Federal Rules of Evidence apply to proceedings before United States courts). Accordingly, this Court has no authority to grant federal habeas relief under 28 U.S.C. § 2254 because such relief does not generally lie for errors of state law. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) ("Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment.") (citing *Estelle*, 502 U.S. at 69–70); *see also Foley v. Parker*, 488 F.3d 377, 384 (6th Cir. 2007) ("A trial judge's decision concerning the admission of evidence is a state-law matter generally not subject to habeas review.").

Even if this Court were to convert his Ground Three claim into a due process claim, however, it would be dismissed as procedurally defaulted.  Powell never "fairly presented" this claim – that the trial court's admission of the expert evidence and testimony violated his fundamental right to a fair trial – to the State courts. (*See* ECF No. 14 at 58; ECF No. 13-1, Exs. 55, 59). Because Powell failed to raise this due process claim on direct appeal, and he can no longer do so, Ground Three is procedurally defaulted.

Additionally, any argument that he properly exhausted the claim by raising the arguments in his Ohio App. R. 26(B) petition fails as "an Ohio App.R. 26(B) application only preserves Sixth

Amendment ineffective assistance of appellate counsel claims, it does not preserve any underlying claims because they are 'analytically distinct." *White*, 431 F.3d at 526.

Powell cannot overcome his procedural default of Ground Three. As discussed above, Powell has not shown good cause for his procedural default nor that a miscarriage of justice will occur if the procedural default is not excused. (*See* ECF Nos. 4 and 14). Because Powell has not established cause for his procedural default, this Court need not address whether he was actually prejudiced. *Simpson*, 238 F.3d at 409.

Accordingly, Ground Three should be dismissed as it raises a state law evidentiary matter that is not cognizable. Moreover, to the extent Ground Three presents a due process violation, it is procedurally defaulted and should be dismissed.

### D. Ground Four

In Ground Four, Powell states that the "State of Ohio is in violation of the Interstate Agreement on Detainers Act (IADA) O.R.C. 2963.30. Article 1, 10, el 3, of the Ohio Const. violation of VI, and IVX Amendment of U.S. Constitution." (ECF No. 4, PageID #: 11).

In support, Powell states that

> Petitioner requested speedy trial pursuant 111(2) of the (IADA). 3/15/16 began running of time. Arrived in Ohio jurisdiction on 5/26/16. Requested 'speedy trial' pursuant Article IV(C) on 7/21/16. Was held in the Cuyahoga County Correctional Center, from 5/26/16 through 5/17/18. Trial commenced on 1/22/18. Around 480-days over the 180-day requirement of Article 111(2), and around 460-days over the 120- day requirement of Article IV(C), and V of the (IADA). Trial was continued continually to wait for prosecutions alleged victim (M.S.) to be released from incarceration in Las Vegas, Nevada. (Tr. 668-669). The state continually continued this case without good nor reasonable cause being shown on the record.

(*Id.*). Respondent argues that Ground Four should be denied and dismissed as it is not cognizable, procedurally defaulted, and/or meritless. (ECF No. 13, PageID #: 106).

Under Sixth Circuit precedent, "a violation of [the Interstate Agreement on Detainers] . . . is not a basis for habeas corpus relief." *Browning v. Folz*, 837 F.2d 276, 283 (6th Cir. 1988); *see also Everett v. Burgh*, 477 F. App'x 325, 327 (6th Cir. 2012) (claim that "State violate the Interstate Agreement on Detainers . . . by taking too long to bring [the petitioner] to trial" was "not cognizable on federal habeas review"); *Curtis v. United States*, 123 F. App'x 179, 184–85 (6th Cir. 2005) (IAD claims are not cognizable in § 2241 cases). Powell's Traverse does not refute Respondent's arguments that his fourth relief ground is not cognizable in federal habeas review. (*See* ECF No. 14 at 58-65).

Because Powell's claim is not cognizable, Ground Four should be dismissed.[5]

## VII.     Certificate of Appealability

### A.     Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

---

[5] Respondent also argued that any federal constitutional speedy trial claim is procedurally defaulted. However, there is no indication that Powell attempted to raise a federal constitutional speedy trial claim. (*See* ECF No. 14 at 58-65).

### B.      Analysis

Powell's grounds for relief are procedurally defaulted and not cognizable. If the Court accepts the foregoing recommendation, then Powell has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VIII.   Recommendation

Powell has presented only procedurally defaulted claims and not cognizable grounds for relief. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: March 14, 2024

_s/Carmen E. Henderson_
Carmen E. Henderson
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).